The first case for argument is Timeless Bar, et al., v. Illinois Casualty Company. All right, Mr. Alton, we'll hear from you first. Thank you and good morning. May it please the Court, my name is Brock Alton with the law firm of Hellmuth & Johnson, and I am here this morning on behalf of Appellant. Two companies seeking insurance proceeds from Appellee, Illinois Casualty Company, which I will almost certainly call ICC throughout. What brings us to the Court today is an unfortunate incident. One of the two owners of these companies, Andrew Welsh, undeniably decided to commit arson and burn down the building owned by Horseshoe Club, LLC, and with it the contents and other business of Timeless Bar that were in that building. As a result, he then made a false claim of insurance or was participating in that false claim with ICC. He has since pled guilty, so it is an acknowledged arson. And we have even acknowledged that the policy as written and the exclusions relied upon by ICC are written in such a way that they would remove coverage if they were interpreted by this Court just on their face. The issue is we have in Minnesota the standard fire policy. This loss occurred in Minnesota. This Court's job in the District Court before it is to interpret the standard fire policy in accordance with the court decisions that we have from the Minnesota Supreme Court. We believe that the District Court did so incorrectly and therefore must be overturned. As a starting point, the standard fire policy states, first of all, that it's a consumer statute, that it must be read broadly in favor of coverage, and that when policies restrict coverage further than the standard fire policy itself, their clauses, their analogous clauses, will be removed and substituted in automatically and reformed by the standard fire policy. The ICC policy has exclusions that state not only when the insured takes an action such as submit a fraudulent claim, will coverage be removed, but that on top of that, when its officers, directors, authorized personnel take part in that, in those actions, again, coverage is removed even from the insured, the businesses in this case. The standard fire policy has no such clause. Instead, its clause states, and this is important for all the cases that follow it, that the insured, when the insured takes action such as that, coverage is excluded. So the clause is different. The question is, is ICC providing less coverage with their clauses than what the standard fire policy provides? And we have three cases that provide the answer, and the answer is yes. The first is Hoggs Unlimited. These cases are all cited in the brief. If your honors would like, I can provide citations, but I assume that they are readily available to you as well. I guess the question I have is whether a corporate officer acting on behalf of a corporation or an LLC member acting on behalf of the LLC could be considered a third party rather than the insured itself. That decision was actually made in this case on a motion to dismiss that Ms. Welsh, my client as well, was excluded as an insured, and actually that is typical in first-party contracts. In third-party contracts, CGL policies, typically the insured is a broad enough concept to include directors, officers, et cetera, lest they be sued for activities that are made in conjunction with the business. But in this case, we have a holding, and I reviewed the case law, and it's a pretty good holding, that Mr. Welsh and Ms. Welsh were both not insureds. They are third parties to this contract. So with that, your honor, how have courts interpreted the insured in contexts that are at least similar to this? Again, it starts with Hoggs Unlimited. That case involved a partnership. Not only was the partnership listed as an insured, but so were the partners, a small factual difference. One partner destroyed Hoggs that were the business of this partnership using gas. He also submitted a false insurance claim just like in this case. And the case gets to the Minnesota Supreme Court, and the company in that case, which I think was Farm Bureau, is asking the Supreme Court to hold, based upon his actions, not only can he not recover, but neither can his partners or the business. The court rejected that. It did so for two reasons. One, that wasn't a fire case, but the clause in that policy was the same as the standard fire policy, and it said the actions of the insured will prevent it from obtaining coverage. And the court holds that the insured in that context means the actor who did whatever the bad act is, in that case killing Hoggs, and the actor only. There's then a second part, and this is as important to this case as anything else that you will hear. So they just say, based upon the language of the policy itself, the insured means the one person. You don't get an exclusion. That would automatically make that clause different than the clauses here. Does it make any difference that in Hoggs Unlimited, the innocent insureds were also listed as named insureds under the policy? Your Honor, the district court thought that it did make a difference. I don't think so for two reasons. First of all, the standard fire policy itself doesn't say anything about innocent coinsureds versus innocent insureds. I believe that when the insured is innocent, and if the court takes the approach that our cases say we must, which is to find coverage on behalf of consumers in the State of Minnesota, you don't read this strictly against insureds. The standard fire policy is to be read broadly. That any innocent insured, whether the bad actor is a coinsured or not, should have coverage under their policy still. And I would challenge the court to come up with a reasoned distinction between the two. Well, can I have, I'm sorry to interrupt. Go ahead. Oh, just going to say, if a coinsured, you know, husband and wife, two people that know each other well, if one insured can't take coverage from the other insured in the State of Minnesota in the case of a fire loss, why would it be different when the bad actor is a third party to the  And my question is, but the beneficiary is a third party beneficiary under the contract, right? The real coinsured is the company itself, right? And so the only claim that the owner has is after claims for the people with secured claims are satisfied, and then you would be just an unsecured creditor. And if there's anything left over, you'd have the right to collect something as an unsecured creditor, right? That is correct. And so that third party beneficiary is in some ways a stranger to this policy, right? And so the issue I think really turns on whether or not the action of a who's not an insured because the corporation is actually the insured party. So the question really is, are the acts, are the wrongful acts of Mr. Walsh attributable as the acts of the corporation itself? Exactly. And again, twice at least, but there are three cases that really matter. Our courts have said no. And the first is Hoggs. The reason why I say that is, Gustav Stables, a case decided in Nebraska, our court was asked to follow it. That is, of all the cases that the court has been briefed on, Gustav Stables is the closest to this one. It's a husband and wife. They own a restaurant. Here we have a husband and wife that own a bar. A divorce occurs. Post-divorce, husband is, in that case, essentially the only actor on behalf of the corporation. The business is failing. He colludes with another gentleman to burn it down. Afterwards, and submit a false claim for insurance. Both the company and his wife, and I believe in that case, again, she was not an insurer, just like here, sought coverage. And the Nebraska Supreme Court, which doesn't have a standard fire policy, says, no, he's an alter ego of the company. His actions are the company's actions, essentially the argument being made here today. Therefore, when he does that, the company can't recover, and there's no flow down, which Your Honor is talking about, to the innocent co-insured spouse. Okay? We are asked in Hoggs, will you please follow that? And our Supreme Court says, no, we think we have a better rule. Innocent co-insureds, because in that case they were all insureds, will still be entitled to get their proportional share. And, Your Honor, I would say, you know, there's two exceptions in that case, one of which is broad enough that it should alleviate any concerns about Andrew being able to benefit, or somebody in a similar circumstance where they're the only owner or only director of a company being able to benefit. The court says, well, when it comes to our standard fire policy, that person doesn't get to. So in such a case, even though they're not alter egos under our laws, you're still going to say there's no recovery for the company, or at least none that can flow down to that person who committed the bad act. Didn't the Minnesota court, though, distinguish that Nebraska case on the grounds that the named insured was the only claimant? The corporation was the only claimant in the Nebraska case? They distinguished the case, Your Honor, based upon the language of our standard fire policy. No, I'm saying didn't they distinguish it based on the facts of the Nebraska case being different? I don't believe, I mean, the facts... This ruling is somewhat askew because the corporation, the named insured, is the only party claimant in the lawsuit. That's a quote from the Hogg's case. But it's just one of many reasons that they declined to go there. So they're saying, yes, we're in a slightly different circumstance, but nevertheless, we're not going to follow what I've termed in some courts called a corporate arson doctrine, which, by the way, they back up in Travelers v. Bloomington Supply. Here's where I kind of hang up, and it's maybe because I'm just not smart enough to figure out what the policy problem is. But let's say, for example, the claim here was not being made by Mr. Welch's ex-wife, but instead was being made by an unsecured creditor of the bar, somebody who supplied beer to them, and they're owed, say, $15,000, and they are making that claim, right? Under the alter ego theory, that would mean that the only way that payment could ever be made is it would have to be paid to the company, and that alter ego theory becomes a problem because, I mean, first of all, you can sit there and you can argue that, well, whatever this whole arson thing is, it's not really an act that's made to advance the interests of the corporation, right? And so, therefore, it should be an ultra vires act, right? But because of the way the alter ego theory has been applied, we don't want the court, because, you know, what you don't want is a guy to burn down a building when he owes $200,000 and the building's worth $200,000, and then all the creditors get paid and he walks out of it debt-free. If he doesn't get caught, he gets home free. If he gets caught, he does a little bit of jail time, but at least he's got no debt. I mean, you know, right? And so my question is, is that why is this ex-wife different than any other third-party creditor? A fair question, Your Honor. I don't really believe that she is, but in this case, third-party creditors were paid. Oh, were they? They were, and that is why in my briefing even, and I'll acknowledge here today, one of the victims of Mr. Welsh's actions is ICC. I just don't believe we should make another victim in Ms. Welsh, who would be the third-party beneficiary of a flowdown of recovery here. Now, I wanted to get to, because this backs up the Hogg's decision. In Bloomington Steel, none of the cases are quite square. It's a third-party case. It's a third-party policy, excuse me. One gentleman is accused of assault of another. He's sued along with his company, and the same sorts of arguments that are being made to this Court are made there. Well, he's the sole shareholder in that case and the sole owner of this company. His actions are the actions of the company. That is repeatedly rejected, unlike three separate occasions, by our Supreme Court again in that case. Furthermore, the language there had the insured in it, which is the same as our standard fire policy, and this Court decides, and this is quite important, that travelers explicitly acknowledge Bloomington Steel's separate status for coverage purposes when it issues the policy at issue here. That comes after they're saying, no, we're not going to make the company an alter ego of this gentleman who is not even an insured. We're not going to go there. That's one thing Bloomington Steel does. It then provides some drafting tips and says, had you wanted to make an exclusion for this gentleman's acts and make him an alter ego, you could do so. They use the example of any insured. He was also an insured. It's a CGL policy. So make him, you know, have your clause say that any insured's intentional act will exclude coverage, and just like that, in this case, you would have been able to exclude coverage based upon your policy language alone. But you didn't have that, so you can't. And then they make a note. They cite a third case, Watson versus, I believe it's USAA. There it's husband and wife. Again, a Minnesota Supreme Court case. Husband burned down the house. Wife is ultimately allowed to recover. In that case, they first read just the policy, which used the any language, any insured, and said, well, if we applied this, wife also wouldn't be able to recover. However, we're not going to because we have the standard fire policy. It says the wife gets to recover. They go on now in Bloomington Steel. Again, a corporate case to say, in a first-party context, the drafting tips we've just given you would not be permitted. You still wouldn't be able to recover. You might call it dicta, but this court's job is to predict what the Minnesota Supreme Court would do, and the Minnesota Supreme Court says right there in Bloomington Steel what it would do. It would not permit recovery. I see I'm well over time on my reserved rebuttal time, so I'm going to end now unless your honors have any questions. Thank you. Very well. Thank you for the argument. Ms. Prouty, we'll hear from you. Thank you, your honors. May it please the Court, Beth Prouty here on behalf of Illinois Casualty. We ask the Court to affirm the district court and conclude that when a company CEO and president who is authorized to handle insurance claims for the business makes claims for the business that contain intentional misrepresentations, those misrepresentations are the misrepresentations of the insured, the business. This conclusion is supported by the Minnesota Standard Fire Policy and Minnesota case law. First, the Standard Fire Policy statute provides that a policy is void if after a loss the insured has willfully and with intent to defraud, concealed, and misrepresented any material fact. And the issue in this case is who is the insured? The insured is Timeless Bar and Horseshoe Club. And when the insured is an entity, it can't act by itself. An entity can't fill out an insurance claim. Minnesota has recognized that an entity acts through its agents. Mr. Erickson, I think, touched on this earlier, but can someone engaging in criminal activity be said to be acting on behalf of a corporation? Yes, they can be. When they're acting within the scope of their authority for the corporation, their criminal activity is attributable to the company. And this Court in 2011 in Pioneer Industries applied Minnesota law. And in that case, the company's CFO filled out an application for the insurance company. And in there he lied about checks on the financial system when he was in fact committing fraud and stealing from the company. And this Court applying Minnesota law said that the intentional misrepresentations of that CFO were the misrepresentations of the company because he was acting within the scope of his authority when he filled out that application. And here we don't have an application. We have a claim submission, but there's no substantive difference. It's undisputed that Andrew Welsh had the authority to handle insurance for the company, and within that authority, he submitted the insurance claims for Timeless Bar and Horseshoe Club that falsely stated the fire was caused from an unknown cause. And it's undisputed that was within his role to submit that application. And so we're denying coverage based on the acts of Timeless Bar and Horseshoe Club. They can't act by themselves. They act through their agent, Andrew Welsh. The court, the Minnesota Supreme Court, has also reaffirmed that in Bloomington Steel. And in that case, the owner committed an assault on someone else. And the court said just because it's an owner doesn't mean it's automatically the acts of the company. But they said if that assault had been within the scope and course of his duties for the company, it would be imputed to the company. But in that case, assault wasn't. The court said there's questions of fact, and they remanded it for the jury. But here it's undisputed. Completing insurance applications or submitting insurance claims was within Andrew's role. And in Bloomington Steel, the court also cited to the Fells Acres Day School case out of Massachusetts in 1990. And in that case, the court said intent of an owner can be imputed to a corporation. And they gave an example and said when the owner of a daycare is selling child porn and the income is coming into the company, that conduct is imputed to the company. Here we have Andrew Welch burning down a building so that he can submit an insurance claim and get money for the companies. That conduct is the conduct of the companies. Can that exclusion effectively negate Minnesota's standard fire insurance policy? No, it would not. The standard fire policy looks, it says the policy is void after a loss. The insured has willfully and with intent to defraud misrepresented any material act. And the insured in this case is Timeless Bar and Horseshoe Club. And what appellants are arguing is that this court should hold that in the case of an arson, the standard fire policy doesn't allow the acts of an agent to be imputed to a company. And that essentially means you could never deny coverage to a company for fraud in an arson case because a company can never submit a fraudulent claim on its own. It does so through its agents. The standard fire policy is specifically written to automate to apply to arson cases. And it doesn't contain any exception for businesses. So it's intended to apply to businesses. It anticipates that the insured, the business, may in some cases submit a fraudulent claim. And that's what happened here. There's no arson exception to the law of the agency. There's no Minnesota case that says someone acting in the scope of their authority for the business has their acts imputed to the company unless it's an arson case. That's not found in the standard fire policy, and that's bad law. Appellants' argument would basically void the standard fire policy as applied to entities. And there's no such language contained in the policy and no such case advanced by the Minnesota courts. An appellant makes reference to Hoggs Unlimited as a case they rely on. And I think it's very important for the court to recognize that in Hoggs Unlimited, the partnership and the three partners were all insured on the policy. And the court did not allow the partnership to recover. So appellants tried to make an issue and say, well, the innocent partners there could recover, but they ignore the fact that the partnership did not recover. And it is important in Hoggs Unlimited that each party was separately uninsured. And the court said, we're going to interpret the standard fire policy to protect each insured. We're not going to impute the acts of one insured to void coverage for all of the other insureds. We're going to look at the coverage with respect to each insured separately. Did each insured commit a fraudulent act? And they held the court did not allow the guilty partner to recover or the partnership to recover. And the court looked at whether the guilty partner's acts were within the scope of his authority for the company. And the court held they were not. So far from saying you don't look at agency when you consider who the insured is, Hoggs Unlimited did look at agency and held the guilty partner was not acting within the scope of his authority. And if you look at the Court of Appeals opinion in Hoggs Unlimited, it lays out what the guilty partner's role was for Hoggs Unlimited, and it did not include submitting insurance claims for the partnership or for the other partners who were separately insured. If Jessie had filed the claim on behalf of the businesses instead of Andrew, would the result be different? If only Jessie had done so, perhaps, although I don't think that she had the authority to file claims for the companies. That authority was specifically given to Andy Welsh as the president and CEO of the companies. He was the one designated to file legal documents for the company and to file insurance claims for the company. And I think it is important to recognize that Jessie Welsh in this case is not an innocent insured. She's not like one of those partners in Hoggs Unlimited who could recover. She's not an insured at all. And what the appellants would like this court to do is to essentially pierce the corporate veil and rewrite the standard fire policy to say, it's void if after a loss each owner of the company commits misrepresentation, and to consider, to pierce the corporate veil of corporations and say, well, if you're an innocent owner, you can still recover under this policy issued to your company. And there's no stopping point. That's an absurd result. You have a company with hundreds of members. They can say, well, I didn't authorize the designated representative of the company to file a fraudulent insurance claim. Like, that's not what the standard fire policy says. It says you look to the acts of the insured. And I think also, see, there's no requirement that all owners need to approve the fraud. As the district court here said, it would render the provisions meaningless, rewrite the policies, and make little sense because when does a company ever have a meeting to say, we're going to make a written approval that we're going to approve this fraudulent insurance claim to be submitted. Would you like to address this argument that was made this morning, that the Huggs Unlimited Court rejected the Nebraska decision that's most analogous to this case? Yes, and so I think the court, in its public policy analysis, not in its application of the actual policy, but in considering whether the acts of one insured are imputed to all insureds, did consider Gustav Stables. And in there, it did say the holding in Gustav Stables is rather askew because the district court in Gustav Stables, in that case, the policy was issued only to the corporation. And so the district court had denied coverage to the corporation. But then the Nebraska Supreme Court pierced the corporate veil and said, we're going to treat the husband and wife as partners who are each insured on the policy, but we're going to deny coverage to all the partners due to the bad acts of the one partner. And so in Huggs Unlimited, when it addressed Gustav Stable, it said, we're not going to accept that interpretation. We're not going to say that the bad acts of one insured void the policy for all insureds. We're going to look at the conduct and apply the policy to each insured separately. And that's the concern that we see in Huggs Unlimited. The bad acts of one insured doesn't void the policy for all of the insureds. But here we only have one insured, two insureds, corporate entities, Timeless Bar and Horseshoe Club. Jessie Welsh is not an innocent insured on this policy. And so we're not talking about whether she should have coverage or not. She shouldn't because she's not an insured. And, you know, it's undisputed. It's undisputed that Andrew Welsh was the CEO of Timeless Bar and the president of Horseshoe Club. It's undisputed he was the one responsible for signing legal documents and handling insurance. It's undisputed that Andrew Welsh signed the proof of loss for Timeless Bar and Horseshoe Club. It's undisputed that the proof of loss falsely stated that the origin of the fire was unknown when Andrew Welsh had started the fire. It's undisputed that Andrew Welsh admitted he carried out a scheme to set the fire in order to file a fraudulent insurance claim for Timeless Bar and Horseshoe Club. And applying Minnesota standard fire policy and the case law, applying and considering who the acts of the insured are, it's the acts of Andrew Welsh on behalf of the company that are the acts of the insured in this case. And there's no reason to adopt a rule that acts of an agent on behalf of the company are not imputed to the company in the case of arson. Appellant has cited no case law and no statute for the proposition that the court should adopt such a rule. The only insureds here are Timeless Bar and Horseshoe Club and they submitted a fraudulent insurance claim. So we would ask that the court affirm the district court. This is a straightforward application of the law, too many to the facts, all of which are undisputed in this case. And they all compel the conclusion that when a company's CEO and president who is authorized to handle insurance claims makes claims for the business that contain intentional misrepresentations, those misrepresentations are the misrepresentations of the insured, the business, and they preclude coverage. Thank you. Well, thank you for your argument. We'll hear a brief rebuttal, Mr. Alton. Thank you, Your Honors. It is true there is no case in Minnesota that gives an arson exception, as counsel put it, to the rule that you may not recover when the insured does something wrong. But there are two cases, and we have cited them, that nevertheless discuss when exceptions are made for innocent insureds. The first is Hogs Unlimited. It's destruction of hogs. It's not a fire. The court states, contrary to Farm Bureau's contention, there is no fact issue on whether Cerisi was acting within the scope of his authority when he destroyed hogs and submitted the claim. As a matter of law, he was not. There's no evidence to suggest, even at inference, that the other two partners authorized Cerisi to do what he did. Furthermore, the needless destruction of hogs, making the continuation of the business futile, was not in furtherance of the partnership business. This case is no different than that, even if the type of loss is different. Ms. Welsh did not authorize her husband to burn down the building and lie about it, and the burning down of the building is not in furtherance of the business. Minnesota court has already rejected this. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Thank you. Counsel are excused.